STEIGAUF, JR., PLAINTIFF-APPELLEE, v. OHIO BELL TELEPHONE COMPANY, DEFENDANT-APPELLANT, AND MARTIN, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLEES, v. OHIO BELL TELEPHONE COMPANY, DEFENDANT-APPELLANT.

Ohio Appeals, Seventh District, Mahoning County.

No. 4186. Decided December 26, 1961.

*Messrs. Green, Schiavoni & Murphy,* for plaintiffs-appellees.

*Messrs. Harrington, Huxley & Smith,* for defendant-appellant.

*Mr. Charles V. Koons,* for Amicus Curiae, Communications Workers of America, AFL-CIO.

GRIFFITH, J. This is an appeal on questions of law and fact from a decision of the Court of Common Pleas of Mahoning County. The plaintiffs-appellees are employees of The Ohio Bell Telephone Company and members of the Communications Workers of America, A. F. L.-C. I. O.

In September 1957, plaintiffs-appellees were off work for a period of time during a strike, and the time that they were off was deducted from their net credited service insofar as it was used to determine pensions, disability and death benefits, sickness disability payments, and amount of vacation.

These actions were brought by the plaintiffs-appellees complaining that The Ohio Bell Telephone Company did not have the right to permanently adjust their net credited service under the collective bargaining agreement between the parties. The telephone company claims that it had the right to permanently adjust their net credited service under the terms of an agreement dated December 19, 1957, between the Communications Workers of America, A. F. L.-C. I. O. and the company.

The telephone company contends that the plaintiffs-appellees are not the proper persons to bring this action, and that it is not a proper class action, and that plaintiffs-appellees have an adequate remedy at law. All the facts in this case are stipulated, and the stipulation reads as follows:—

*Introduction*

"This is an appeal on questions of law and fact wherein the plaintiffs-appellees are employees of The Ohio Bell Telephone Company and members of the Communications Workers of America, AFL-CIO.

"In September, 1957, plaintiffs-appellees were off work for a period of time during a strike, and the time that they were off was deducted from their net credited service insofar as it was used to determine pensions, disability and death benefits, sickness disability payments and amount of vacation.

"These actions were brought by plaintiffs-appellees, claiming that The Ohio Bell Telephone Company did not have the right to permanently adjust their net credited service under the collective bargaining agreements between the parties. The Ohio Bell Telephone Company claims that it had the right to permanently adjust their net credited service under the terms of an agreement dated December 19, 1957 between the Communications Workers of America, AFL-CIO, and the company. The Ohio Bell Telephone Company also contends that the plaintiffs-appellees are not the proper persons to bring this action, that it is not a proper class action, and that plaintiffs-appellees have an adequate remedy at law.

*Stipulation.*

"It is hereby stipulated by and between the parties that:

"(1) Plaintiffs-appellees, Martin and Steigauf, are, and since a date prior to 1957, have been employees of defendant-appellant, The Ohio Bell Telephone Company, and members of Communications Workers of America, AFL-CIO, an unincorporated labor organization. Hereafter plaintiffs-appellees will be called 'Plaintiffs,' defendant-appellant will be called the 'Company' and Communications Workers of America will be called the 'Union.'

"The Union, although not a party to this lawsuit, has, at all times mentioned herein, been the duly authorized bargaining representative for all the Company's non-management employees.

"Plaintiff-Martin was president of the Youngstown Local of the Union at the time these cases were filed and is still president of said Local.

"(2) The Company is an Ohio corporation and a public utility furnishing telephone service in Ohio.

"(3) By a written notice dated July 2, 1957 the Union advised the Company that it desired to bargain with respect to modifications of a Wage and Working Condition Contract effective September 9, 1956. The Union and the Company com-

menced bargaining on or about July 31, 1957, and continued until October 22, 1957.

"Said contract was effective from September 9, 1956 until September 8, 1957 and was, by its terms, to continue in effect thereafter, until written notice of termination should be given by one or the other party thereto. No such notice was given and said contract remained in effect until December 19, 1957, on which date it was terminated by the agreement dated December 19, 1957 between the Company and the Union, hereafter referred to.

"(4) During the aforementioned bargaining, plaintiffs and other employees represented by the Union went on strike on September 8, 1957 and continued on strike through October 2, 1957. Said strike was lawful in all respects.

"(5) On October 3, 1957, the greater part of the striking employees returned to work and within a brief time substantially all had returned to work.

"(6) On October 4, 1957, a letter, bearing that date, signed by the president of the Company on its behalf, was mailed to every employee of the Company at his residence address as shown on the Company records. A copy of said letter is attached hereto, marked Exhibit A, and made a part hereof.

"(7) Bargaining continued from time to time through October 22, 1957.

"(8) On November 12, 1957 the Union filed a suit in Case No. 34,049 in the United States District Court for the Northern District of Ohio, Eastern Division against the Company. The Union took the position that during the aforementioned bargaining, the Union, at or about midnight on September 30, 1957, had orally accepted an offer of the Company consisting only of wage and working conditions and not containing any strike termination provisions. The Union in the Federal Court action sought a judgment declaring and specifically enforcing the claimed oral agreement of September 30, 1957. Concurrently, the Union filed a motion for preliminary injunction.

"(9) After a hearing, the motion for preliminary injunction was denied on November 18, 1957. The Company filed its answer December 3, 1957 alleging that the court was without jurisdiction, denying that any contract had been agreed upon as claimed in the complaint, and alleging that the Company's

offer as to wages and working conditions included strike termination provisions among which were provisions for the adjustment of strikers' net credited service for certain purposes. The Company also set up in its answer the defense of the statute of frauds.

"(10) Exhibit B, which is attached hereto and made a part hereof, is a printed volume containing copies of the pleading, certain exhibits, certain orders and portions of the evidence and other proceedings in said Case No. 34,049 in the United States District Court and also on appeal. It does not purport to include all the proceedings in that case. Portions, but not all, of the evidence are contained in Exhibit B. No complete record was ever printed.

"This volume, Exhibit B, was prepared for library reference purposes and, there being sufficient copies in existence, it is believed to be a convenient means by which to place before this Court much of the evidence in the instant case. The page references in Exhibit B are to the large numbers in the upper outer corners.

"(11) Exhibit B contains copies of:

"(a) Transcript of the Docket Entries in the United States District Court (p. 183).

"(b) The Complaint (p. 185).

"(c) Motion for Preliminary Injunction (p. 1).

"(d) The Answer (p. 188).

"(e) The Wage and Working Conditions offer which the Union claimed to have accepted on September 30, 1957 (pp. 332-335, incl.).

"(f) Docket entry denying the motion for preliminary injunction on November 18, 1957 (p. 183).

"(g) The Agreement of December 19, 1957, executed upon the second day of the trial of the case (p. 526-8), approved for filing by the United States District Court (p. 184).

"(h) The judgment of the Court dismissing the case for lack of jurisdiction (p. 366) and the amended judgment to the same effect (p. 367), the amendment being solely for the purpose of including the provision that the Court's memorandum opinion was adopted as Findings of Fact and Conclusions of Law.

"(i) The District Court's memorandum opinion referred to in (h) above (pp. 358-366).

"(j) The Union's notice of appeal from the final judgment of the United States District Court to the United States Court of Appeals for the Sixth Circuit (p. 367).

"(k) The judgment of said Court of Appeals affirming the judgment of the District Court and the opinion of the Court of Appeals thereon (p. 525).

"(1) The Union's petition for a writ of certiorari filed in the Supreme Court of the United States (p. 495).

"(m) Various briefs filed by the parties to the litigation in the United States Courts.

"(12) The Union and the Company on December 19, 1957, during the course of said trial in the Federal District Court, entered into an agreement which was submitted to the District Court and by notation thereon, which the judge signed, was made by him part of the record in Case No. 34049. A copy of said agreement is attached hereto, marked Exhibit C and made a part hereof.

"(13) The Union's petition for certiorari in Case No. 34,049 was denied by the Supreme Court of the United States on October 12, 1959.

"(14) Subsequent to the denial of certiorari by the Supreme Court of the United States, the Union, by its Ohio Director Martin J. Hughes, transmitted on December 11, 1959 a letter bearing the same date addressed to the Company, a copy of which is attached hereto, marked Exhibit D, and made a part hereof.

"(15) The Company, by J. R. Wentz, an Assistant Vice President, by letter dated January 18, 1960, answered the letter referred to in paragraph (14) hereof, said answering letter being attached hereto, marked Exhibit E and made a part hereof.

"(16) After receipt of the Company's letter dated January 18, 1960 (Exhibit E), Martin J. Hughes, Ohio Director of the Union, sent a letter to all of the Union locals reporting on the adjustment of net credited service. A copy of that letter, as it appeared in 'News and Griefs,' Akron Local Union Paper dated March 5, 1960, is attached hereto, marked Exhibit F and made a part hereof.

"(17) Immediately after the execution of the Agreement

of December 19, 1957 and in accordance with its terms, the Company administered employees' net credited service as if it were in fact adjusted. When the time had expired within which the Union could file an application for rehearing of the Supreme Court's denial of certiorari, the Company commenced changing its records so as to reflect the adjustments of net credited service, for certain purposes, referred to in the agreement of December 19, 1957 completing the same in March, 1960. These adjustments affect only the amount of an employee's pension, disability and death benefits, sickness disability payments and amount of vacation.

"(18) During March, 1960, plaintiff, Arnold P. Martin, was given a written notice of the change of 17 days in his net credited service date, for certain purposes stated therein, from July 5, 1955 to July 23, 1955. A copy of the notice is attached hereto, marked Exhibit G and made a part hereof.

"(19) During March, 1960, plaintiff, John C. Steigauf, Jr., was given a written notice of the change of 19 days in his net credited service date, for certain purposes stated therein, from March 19, 1951 to April 8, 1951. A copy of the notice is attached hereto, marked Exhibit H and made a part hereof.

"(20) During March, 1960, all other employees whose net credited service was adjusted, for certain purposes, to reflect the number of days of unauthorized absence each such employee had during the period from September 8, 1957, to October 2, 1957, inclusive, were sent written notices in the same form as Exhibits G and H.

"(21) On April 11, 1960, during bargaining on the wage and working condition contract subsequently dated June 1, 1960, the Union presented written bargaining demands to the Company, item No. 18 of which was 'to invalidate action taken in March, 1960, to change certain service dates for employees who were legally absent from work in September and October, 1957.' A copy of said Union bargaining demands is attached hereto, marked Exhibit I and made a part hereof.

"(22) On May 26, 1960, the Union presented its next written bargaining proposal to the Company to settle the bargaining on the contract. A copy of the proposal is attached hereto, marked Exhibit J and made a part hereof. This proposal withdrew Item No. 18 of the proposal of April 11, 1960 (Exhibit I).

"(23) Demand No. 18 in Exhibit I was not included in any subsequent demand and was not agreed to.

"(24) The Company does not contend that it had a right to adjust an employee's net credited service for unauthorized absence from work during period of September 8, 1957 to October 2, 1957, inclusive, except as authorized by the Agreement of December 19, 1957 (Exhibit C).

"(25) The adjustments of net credited service which the plaintiffs seek to have enjoined affect only the amount of an employee's pension, disability and death benefits, sickness disability payments, termination allowance and amount of vacation. Such adjustments do not affect an employee's seniority or lay-off rights.

"(26) An employee's wage schedule service is not affected by the adjustment of net credited service for certain purposes. An employee's wage schedule service governs his scheduled progressive increases in wages, regardless of merit.

"(27) This stipulation contains within itself or within the exhibits referred to in it all the evidence which either side will offer in this case in this Court of Appeals.

"When filed with the Clerk, it shall be considered as offered in evidence by both parties.

"Both parties waive all right to object because of matters of form. Neither party, however, waives the right to object at the hearing of this case to any matter agreed to herein upon the ground that it is irrelevant or immaterial.

"In witness whereof, the parties hereto, by their counsel of record duly authorized in the premises, have executed the foregoing Stipulation."

On the second day of the trial in Federal Court to-wit, December 19, 1957, and while the trial was still in progress, the union and the telephone company entered into a contract, marked Exhibit C, containing certain provisions for the net credited service adjustments. Paragraphs 5, 6, 7 and 9 are the significant sections applying to the problem before us.

In this written agreement, the Communications Workers of America and the defendant agreed that, pending litigation in Case No. 34049 in the Federal District Court, it would be permitted to deduct from employees net credited service the time spent in the 1957 strike for purposes of determining the em-

ployees' rights in connection with pensions, disability benefits and death benefits, sickness disability pensions, termination allowance and amount of vacations.

The agreement further provided that the adjustments in net credited service provided for would remain in effect during litigation of Case No. 34049 but would be rescinded or made permanent upon the procurement of a final judgment in that case. "Final Judgment" was defined in the agreement as:—

"That judgment which effectively and finally determines the issues after all appeals shall have been concluded."

It must be borne in mind that this agreement grew out of the Federal Court case that was then on trial. Had there been no case pending in Federal Court, it is likely that this contract never would have been executed. Case No. 34049 was dismissed for want of federal jurisdiction. Thereupon, the defendant proceeded to make the adjustments.

The final judgment contemplated by the parties in the December 19, 1957 agreement, while it did not pass upon the matter of the existence or non-existence of an oral contract on or about September 30, 1957, it did pass upon the issue of jurisdiction, and that issue was a serious one in the Federal Court.

It determined, and for all time, that it had no jurisdiction and entered a judgment accordingly. This judgment was adverse to the union and thus Exhibit A, attached to the contract, became an effective part of the contract.

Considering the circumstances underlying the execution of this agreement, we must try, as best we can, to put into concrete form what the intentions of the parties were, not by slavishly following the words but to say what the underlying purpose was as expressed by the language used. We interpret this contract, in the light of its plain unambiguous language, and believe that this contract is binding on both parties in all of its terms.

The federal case was finally determined by the decision of Judge Weick that it had no jurisdiction. Clearly, the burden of proof was on the union to show jurisdiction, and the court ruled adversely to the union. That ruling was a final judgment so far as that case was concerned and effectively finally determined the issue of jurisdiction, and that issue was presented

to that court by the answer of the defendant. This was a final judgment within the meaning of the agreement of December 19, 1957.

The union contends that it did not, in the December 19, 1957 agreement, or at any time thereafter, agree that the company could adjust employees' net credited service in the absence of a judicial decision on the merits upholding the company's position with respect to the agreement of September 30, 1957. Its contention is that federal jurisdiction was not an issue and, in support thereof, relies on paragraph 5 of the agreement, which reads:—

"If the final judgment, as herein defined, in Case No. 34049 is adverse to the Union or the Union voluntarily dismisses the action prior thereto, Exhibit A, which is attached hereto and made a part hereof, shall become a part of the contract to be executed pursuant to paragraph 1 hereof and said Exhibit A shall thereupon be effective as of December 19, 1957. In that event, the contract entered into pursuant to paragraph 1, hereof, which will be effective as of December 1, 1957, shall remain in effect."

The defendant company urges that "Final Judgment," as used in paragraph 5, means the final judgment of dismissal, as entered by the Federal Court, and not necessarily any judgment on the merits or any determination one way or the other on the question of whether the parties had entered into the alleged oral contract of September 30, 1957.

This contract was entered into in writing between the parties under the scrutiny of their counsel and with the approval of the Federal Court, the Honorable Paul C. Weick, who reviewed the contract and made it a part of the record in Case No. 34049. Both parties were in that court with full knowledge that the company was advancing three grounds for a judgment against the union and relied on three defenses, to-wit:—

1. Lack of jurisdiction.

2. There had been no agreement on a wage or working agreement.

3. Statute of Frauds.

The Federal Court disposed of the case on jurisdictional grounds and entered a judgment of dismissal. Clearly, this decision was a final judgment adverse to the union. The plain-

tiff's case fell for want of jurisdiction. This determined the issues for all purposes in the Federal Court case.

The contract of December 19, 1957, was a binding contract, depending on the outcome of the trial then pending in Federal Court, and Judge Weick's decision in 1958, conferred authority on the defendant to make the adjustments. That Court's decision, though it does not bar another action or proceeding for the same cause, was final for all purposes so far as that Court is concerned and ended the litigation that had been instituted but, of course, it did not preclude a review to ascertain whether the District Court has kept within the power conferred upon it. The reviewing court, however, did affirm Judge Weick's decision, and that judgment today stands undisturbed.

We hold that the agreement of December 19, 1957, since the Federal Court's decree was adverse to the union, does authorize the Ohio Bell Telephone Company to make the adjustments in accordance with Exhibit A to that agreement, and the same shall be in effect as part of the wage and working conditions contract of that date.

The questions of whether the plaintiff has adequate remedy at law, whether the class action may be maintained, and what standing the plaintiff has to enforce his rights, are of no moment, since we have reached the conclusion, in our interpretation of the contract of December 19, 1957, that the decision of the Federal Court is a final judgment and adverse to the union.

It follows that the restraining order prayed for must be denied. Petitions dismissed.

BROWN, P. J., concurs.
DONAHUE, J., concurs in judgment.

DONAHUE, J., concurring. The judgment reached by the majority of this court is correct, but I cannot agree with the reasons therefore.

The agreement of December 19, 1957, conditions the solution of the adjustment question on the "Final Judgment" in the Federal Court case. It then defines what it means by "Final Judgment" as:—

"That judgment which effectively and finally determines the issues after all appeals shall have been concluded."

It seems to me that the question must be resolved in the light of the above definintion. We may interpret that definition, but we may not rewrite it.

We must first note that the word "issues" is plural. Can we say that any final determination which embraces only one of several important "issues" fulfills that requirement? We are assuming for this purpose that jurisdiction is an issue in the case. Jurisdiction, in our opinion, is an issue in the preliminary, procedural aspect, but not an actual issue material to the case itself. It merely raises the question as to whether or not the court has any authority to hear or decide the real issues in the case.

But even if we do consider it an issue, we do not believe that the decision of the Federal Court, based on this one "issue," "* * * effectively and finally determines" all "the issues * * *." In fact, nothing has been determined except that, as presented, the case is not one which the Federal Court is empowered to even consider.

For these reasons we feel that this was not such a final determination as required by the contract, and therefore did not determine the question of adjustments as provided by the December 19, 1957, agreement and further, that the question not having been decided there is no agreement as to such adjustments insofar as the December 19, 1957, agreement is concerned.

Looking back to the previous contract of September 9, 1956, we find that, according to the third stipulation, this was terminated by the agreement of December 19, 1957.

Therefore, since the December nineteenth agreement does not control adjustments and since all previous agreements, embodying such control, have been terminated, we are left with no agreement whatsoever in regard to such adjustments. With no agreement, there is no basis for any injunction and it is properly denied.